United States District Court
Southern District of Texas

**ENTERED**

December 30, 2019

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-250 |
| | § | |
| 72.26 ACRES OF LAND, MORE OR | § | |
| LESS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

The Court now considers the "Opposed Motion of the United States of America for Order of Immediate Possession"[1] (hereafter, "motion for immediate possession") filed by the United States of America ("United States") and the response[2] filed by Friends of Wildlife Corridor ("Defendant").[3] The Court also considers the "Opposed Motion for Expedited Hearing on the Opposed Motion for Order of Immediate Possession"[4] (hereafter, "motion for expedited hearing") and the "Unopposed Motion to Correct Schedule "A" Due to a Scrivener's Error"[5] (hereafter, "motion to correct Schedule A"). After considering the motions, the record, and the relevant authorities, the Court **GRANTS IN PART** the motion for immediate possession,[6] **GRANTS** the motion to correct Schedule A,[7] and **DENIES** the motion for expedited hearing.[8]

---

[1] Dkt. No. 13.
[2] Dkt. No. 14.
[3] Defendants in this case include Friends of Wildlife Corridor and Sharon Slagle, the registered agent for Friends of Wildlife Corridor. Dkt. No. 3 p. 15.
[4] Dkt. No. 16.
[5] Dkt. No. 12.
[6] Dkt. No. 13.
[7] Dkt. No. 12.
[8] Dkt. No. 16.

## I.   BACKGROUND

This is a land condemnation case concerning Tract RGV-MCS-1215, approximately 72.260 acres of land located in Hidalgo County, Texas (hereafter, "Subject Property").[9] The United States seeks a twelve-month, temporary, assignable easement over the Subject Property, which is owned entirely by Defendant. The United States estimates just compensation at $100.00,[10] which was deposited[11] into the Registry of the Court on August 5, 2019 but has not yet been disbursed. On July 23, 2019, the United States filed its complaint in condemnation,[12] notice of condemnation,[13] and declaration of taking.[14] On August 21, 2019, Defendant filed an answer contesting (1) the legal description of the Subject Property contained in the complaint;[15] and (2) the just compensation estimate.[16] In the answer, Defendant also argues that the United States is exceeding its condemnation powers in the instant case.[17]

On October 10, 2019, the United States filed the motion for immediate possession[18] and motion to correct Schedule A.[19] Defendant responded to the United States' motion for immediate

---

[9] Dkt. No. 3 p. 6.

[10] Dkt. No. 3-1 p. 13 ("Schedule F").

[11] Dkt. No. 6; Minute Entry dated August 5, 2019.

[12] Dkt. No. 1.

[13] Dkt. No. 2.

[14] Dkt. No. 3.

[15] Dkt. No. 8 p. 2, ¶ 5. Defendant alleges that the legal description of the property "may not be accurate." *Id.* Defendant states that, "[t]his inaccuracy includes, specifically, the possibility that the attached document is not a certified copy from the appropriate Hidalgo County Office giving the correct legal description of the subject property." *Id.* Defendant cites to no authority requiring the United States to attach a certified copy of a county document providing the legal description of the Subject Property. The Declaration of Taking Act requires a description of the land, such as the one provided by the United States in Schedule C. *See* 40 U.S.C. § 3114(a); Dkt. No. 3-1 pp 6–7. Moreover, Defendant admits that the 72.260 acreage amount and aerial map of the Subject Property are "more or less, accurate." Dkt. No. 8 p. 2, ¶ 5.

[16] Dkt. No. 8 at pp. 2–3, ¶ 7.

[17] *See id.* at pp. 4–7, ¶¶ 18–32 (citing U.S.C. § 1103(b)).

[18] Dkt. No. 13.

[19] Dkt. No. 12.

possession on October 15, 2019.[20] On December 19, 2019, the United States filed its motion for expedited hearing.[21] The Court first turns to the motion for expedited hearing.

## II.   MOTION FOR EXPEDITED HEARING AND CAUTIONARY NOTE

The Court first considers the motion for expedited hearing filed by the United States. Therein, the United States requests that the Court "expedite" its decision on the motion for immediate possession or alternatively set the issue for hearing, on the grounds that "the United States will incur significant monetary damages arising from delayed start of construction."[22] Defendant has until January 9, 2020 to respond. However, because the motion for expedited hearing includes arguments similar to those proffered by the United States in the motion for immediate possession, the Court considers the motion for expedited hearing prior to Defendant's response.

The United States' request that the Court "expedite" this matter is baffling to the Court. The United States has multiple land condemnation cases pending before this Court, many of which originated as early as 2008. This Court has reprimanded the United States repeatedly for its inefficient handling of these matters.[23] Consequently, the Court finds it ironic that after the Court has spent hours of valuable time addressing the United States' inability to adjudicate these matters in an efficient and timely manner, the United States would request this Court "expedite" its decision on a pending motion. Such request is mystifying in light of the lack of substance in

---

[20] Dkt. No. 14.
[21] Dkt. No. 16.
[22] *Id.* at p. 3, ¶ 14.
[23] On multiple occasions, the United States has (1) requested the Court dismiss interested parties that have been deceased for many years (Case No. 7:09-cv-09 Dkt. No. 6; Case No. 7:08-cv-61 Dkt. No. 60); (2) requested the Court dismiss or substitute interested parties that never had an interest in the property and were mistakenly added to the case (Case No. 7:09-cv-09 Dkt. No. 28); (3) requested that the Court disburse just compensation as to a particular interested party without citing to proof of ownership (Case No. 7:08-cv-177 Dkt. No. 107; Case No. 7:08-cv-66 Dkt. Nos. 74, 76; Case No. 7:08-cv-61 Dkt. No. 74); and (4) failed to complete surveys and file an amended declaration of taking in a timely manner (Case No. 7:08-cv-177 Dkt. No. 108). These deficiencies represent a mere fraction of those this Court is forced to address on a regular basis. As the Court has already expended a significant amount of time reprimanding the United States in the instant order, the Court declines to outline the deficiencies further.

the motion for immediate possession, as explained below. Accordingly, the Court **DENIES** the motion for expedited hearing.[24] The Court now turns to the United States' motion for immediate possession[25] and Defendant's response.[26]

## III.   MOTION FOR IMMEDIATE POSSESSION

As an initial matter, the Court first addresses another deficiency: the United States' noncompliance with Federal Rule of Civil Procedure 7(b)(2) ("Rule") with regard to the motion for immediate possession. Rule 7(b)(2) provides that "[t]he rules governing captions and other matters of form in pleadings apply to motions and other papers."  Rule 10(b) in turn provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

The instant motion for immediate possession[27] does not have numbered paragraphs, hindering the Court's reference to the parties' arguments. The Court cautions the United States that future submissions should consistently number each paragraph to properly comply with the rules. The Court now turns to its analysis.

### a.   Legal Standard

Pursuant to the Declaration of Taking Act, the Government may bring an accelerated proceeding to acquire land, or an easement in land, for public use by filing a Declaration of Taking setting forth a statement of  authority under which the land is being taken, the public use for which the land is being taken, a description of the land, the estate or interest in the land being taken, a plan showing the land being taken, and an estimate of the just compensation amount.[28]

---

[24] Dkt. No. 16.
[25] Dkt. No. 13.
[26] Dkt. No. 14.
[27] Dkt. No. 13.
[28] *See* 40 U.S.C. § 3114(a).

"The United States has the authority to take private property for public use by eminent domain . . . but is obliged by the Fifth Amendment to provide 'just compensation' to the owner thereof."[29]

Upon the filing of the Declaration of Taking and depositing the estimated compensation amount in the Registry of Court, the following events occur by operation of law: "(1) title to the estate or interest specified in the declaration vests in the United States; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation."[30] The court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner."[31] However, the district court performs "an almost ministerial function in decreeing the transfer of title" and is "powerless to dismiss the proceedings."[32]

Under the Declaration of Taking Act, "[t]itle and right to possession thereupon vest immediately in the United States."[33] The Supreme Court has recognized that the purpose of the Declaration of Taking Act is "to give the Government immediate possession of the property," while simultaneously providing the former owner "immediate cash compensation to the extent of the Government's estimate of the value of the property."[34] The United States may avail itself of the expedited procedures prescribed by the Act "whenever an officer of the United States is authorized to bring a condemnation action in federal court."[35] However, courts have determined

---

[29] *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 9 (1984) (citation omitted).
[30] 40 U.S.C. § 3114(b); *see East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004) (in a Declaration of Taking Act case, "[t]itle and the right to possession vest in the government immediately upon the filing of a declaration and the requisite deposit").
[31] 40 U.S.C. § 3114(d)(1).
[32] *U.S. v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981), *cert. denied*, 454 U.S. 828 (1981).
[33] *Kirby Forest Indus.*, 467 U.S. at 5; *162.20 Acres of Land*, 639 F.2d at 303 ("[W]here the government is not already in possession of the property, the filing of a declaration of taking and deposit of estimated compensation vests title in the United States, accomplishing the taking.").
[34] *U.S. v. Miller*, 317 U.S. 369, 381 (1943).
[35] *U.S. v. 1.04 Acres of Land, More or Less, Situate in Cameron County, Tex.,* 538 F. Supp. 2d 995, 1007 (S.D. Tex. 2008).

the eminent domain statutes require some level of negotiation between the government and the owner of a property interest prior to the institution of eminent domain procedures.[36]

The sole defense to a condemnation action is that the United States lacks the authority to take the interest sought in the complaint in condemnation.[37] The Fifth Circuit has found that judicial review in condemnation actions is limited to "the bare issue of whether the limits of authority were exceeded."[38] Additionally, while failure to follow consultation procedures may delay possession, non-compliance with any consultation requirements is not a defense against the condemnation itself under the Declaration of Taking Act.[39]

###### b.  *Legal Analysis*

The United States moves for immediate possession on the grounds that (1) the Declaration of Taking Act (hereafter, "the Act") provides the United States with significant authority that  entitles it to immediate possession of the Subject Property; and (2) the United States requires immediate possession in order to meet a congressional directive to construct border fencing in the Rio Grande Valley Sector.[40] Additionally, the United States references presidential Executive Order 13767, § 4(a) which directs the Secretary of the Department of Homeland Security to take appropriate steps to plan, design, and construct a wall along the southern border[41] and the Consolidated Appropriations Acts of 2018 and 2019,[42] which appropriated funds for said purpose.

---

[36] *Id.* at 1010 (citing 8 U.S.C. § 1103(b)(3)).

[37] *162.20 Acres of Land*, 639 F.2d at 303.

[38] *Id.*

[39] *1.04 Acres of Land*, 538 F. Supp. 2d at 1013; *see also 162.20 Acres of Land*, 639 F.2d 299 (holding under 40 U.S.C. § 258a, the predecessor statute to 40 U.S.C. § 3114(d), that while a district court can enjoin possession of the property until there was compliance with the requirements of the National Historical Preservation Act of 1966, such lack of compliance is not a defense to the condemnation itself).

[40] Dkt. No. 13 pp. 2, 4.

[41] Dkt. No. 13 p. 4.

[42] *Id.* at pp. 2, 4 (citing Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733 (2018); Consolidated Appropriations Act, 2019, Pub. L. 116-6, 133 Stat. 230 (2019)).

Despite having multiple land condemnation cases before this Court, the United States fails to proffer any basis for its request that this particular case be handled expeditiously in comparison to similar cases. While the United States provides the requisite statutory justification for why it is entitled to immediate possession, the United States merely states that this case must be expedited because the United States stands to "incur significant monetary damages arising from delayed start of construction."[43] The United States also indicates that, "[t]ime is of the essence."[44] Broad statements such as these provide the Court with little to no information as to why the United States requires immediate possession outside of its statutory entitlement pursuant to the Act.

Defendant argues that (1) the Act does not "automatically" entitle the United States to take immediate physical possession of the Subject Property; and (2) because the congressional mandate was passed over twelve years ago, immediate physical possession of the Subject Property cannot be necessary to fulfill the congressional mandate.[45] The United States points to the Secure Fence Act of 2006 as evidence of a congressional mandate.[46] Defendant notes that the Secure Fence Act of 2006 was enacted over twelve years ago and Executive Order 13767 was enacted two years ago.[47] On this basis, Defendant argues that there is no urgency requiring immediate possession.[48]

Finally, Defendant requests, in the alternative, that should the Court grant the United States' motion, the Court require the United States to provide Defendant "reasonable notice of no less than 72 hours" before entering the property.[49] Defendant further requests that should the

[43] Dkt. No. 16 p. 3, ¶ 14.
[44] Dkt. No. 13 p. 2, ¶ 2.
[45] *See* Dkt. No. 14 pp. 2, 4.
[46] Dkt. No. 13 p. 4 (citing Pub. L. 109-367, 120 Stat. 2638).
[47] Dkt. No. 14 p. 4, ¶ 10.
[48] *Id.*
[49] *Id.* at p. 5, ¶ 11.

7 / 13

United States "cause any actual damages to the property during surveying activities (including without limitation any damage to native habitat), the Court should require the [United States] to compensate Defendant for any such actual damages."[50]

Defendant's first argument is to no avail. Under the Declaration of Taking Act, once the United States has fulfilled the statutory requirements, the "[t]itle and right to possession . . . vest immediately in the United States."[51] Here, the United States has filed a Declaration of Taking and deposited the estimated compensation amount in the Registry of the Court.[52] Accordingly, title has vested in the United States, the land is condemned, and Defendant is entitled to compensation by operation of law.[53] All that remains is for this Court to fix the time and terms on which the parties in possession are required to surrender possession.[54]

Defendant's second argument implies that because so much time has passed since the congressional mandate and Executive Order, the United States cannot argue that immediate possession is necessary after the border wall project has seen significant delay. This argument amounts to stating that because the border wall project has already been delayed, the United States has no reason to protest against further delay.

Congress has provided a mandate and appropriated funds for the building of the border wall and the executive has utilized its authority to implement the will of Congress. The Court is unconvinced by Defendant's argument that since there has already been delay in achieving the will of Congress, a further delay is of no impact. The fact that it has taken twelve years to fulfill a congressional mandate provides no reason for further delay.

---

[50] *Id.* ¶ 12.

[51] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 5 (1984); *United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) ("[W]here the government is  not already in possession of the property, the filing of a declaration of taking and deposit of estimated compensation vests title in the United States, accomplishing the taking.").

[52] *See* Dkt. Nos. 3, 6.

[53] *See* 40 U.S.C. § 3114(b).

[54] *Id* at § 3114(d)(1).

While the Court is unable to question many aspects of the United States' significant authority under the Declaration of Taking Act, the Act does provide this Court the authority to fix the time and terms on which possession is enacted.[55] This Court's authority to fix the time and place of possession is, in part, to ensure that the United States does not abuse the authority it has been granted and that landowners are afforded sufficient process before being deprived of their property.[56]

Thus, the Court considers the process that has been afforded. The United States indicates that negotiations regarding the Subject Property began in March 2019.[57] Between March and May 2019, the Army Corps of Engineers and U.S. Customs and Border Patrol negotiated with Defendant's representatives in an attempt to have Defendant sign a Right of Entry and Site Assessment granting the United States temporary access to the Subject Property.[58] In May 2019, the matter was referred to the U.S Attorney's Office, after which Defendant retained counsel and it was determined that an agreement between the parties could not be reached.[59] The United States then filed its condemnation documents in this Court on July 23, 2019.[60]

---

[55] *Id.* at § 3114(b–d); *Tarrant County*, 432 F.2d 1286.

[56] *See United States v. 74.57 Acres*, No. 12-0239-WS-N, 2012 U.S. Dist. LEXIS 51441, at *7-8 (S.D. Ala. Apr. 11, 2012) (noting that "[f]ederal courts have construed [§ 3114(d)] as empowering (and perhaps even obligating) district courts to examine the equities of the matter to evaluate whether some undue hardship to the present landowner or occupant might warrant some temporal gap between the filing of the declaration of taking and the owners' surrender of possession."); *Sage, 361 F.3d at 825* ("Although the district court fixes the time and any terms of the possession, the government takes possession of the condemned property as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay."); *United States v. Certain Land in Borough of Manhattan, City, County and State of New York*, 332 F.2d 679, 682 (2nd Cir. 1964) (remanding for district court to exercise its statutory power "to determine the terms and conditions of possession by the government" after hearing from such witnesses as all parties may wish to call); *United States v. 6576.27 Acres of Land, More or Less, in McLean County, N.D.*, 77 F. Supp. 244, 246 (D.N.D. 1948) (act affording court the power to fix time and terms of possession confers "duty on the part of this Court to see that such date for possession and terms of possession are in accordance with the equities.").

[57] Dkt. No. 11 p. 6, ¶ 15.

[58] *Id.*

[59] *Id.* at p. 7, ¶ 15.

[60] Dkt. Nos. 1–3.

Defendant has had over nine months' notice of the United States' potential condemnation.[61] Additionally, Defendant had sufficient time to consult and engage representation. Defendant provides no affirmative reason for delaying possession. Thus, while the Court reminds the United States that it should not, and may not, rely on this Court, an independent member of the judiciary, to rubber-stamp *any* judicial filing by *any party* without engaging in the scrutiny necessary to ensure fundamental fairness of process for all parties, the Court finds that Defendant has not provided any reason to delay possession and the United States has provided evidence that it has engaged in good faith consultations and negotiations as required under the relevant statutes. Thus, Court finds that the United States should be granted immediate possession of the requested easement.

However, the Court also determines Defendant's request for 72 hours' notice before the United States enters the property to be reasonable. Accordingly, the Court utilizes the authority provided it under the Declaration of Taking Act to fix the terms in which Defendant surrenders possession[62] to require the United States provide Defendant with 72 hours' notice before entering Defendant's property.

Defendant also requests the Court award it actual damages in the event the United States or its contractors "cause any actual damages to the property during surveying activities (including without limitation any damage to native habitat). . ." The Court is unaware of any authority enabling the Court to preemptively agree to assess and award damages for harm that may occur during the course of the United States' easement. However, the Court is sympathetic

---

[61] *See* Dkt. No. 11 pp. 6–7, ¶ 15.
[62] *See* 40 U.S.C. § 3114(d)(1); *see also see also United States v. 1.04 Acres*, 538 F. Supp. 2d 995, 1014 (S.D. Tex. 2008) (noting that pursuant to the authority in § 3114(d) courts may set conditions prior to entry, including requiring consultation).

to Defendant's concern that it may not be adequately compensated for the United States' activities on the Subject Property.

To ensure the Defendant's rights to their property are fully protected, the Court additionally takes into consideration the issue of compensation. The Court is concerned that the estimated compensation of $100.00 is insufficient given the easement being requested. The subject property here is 72.260 acres and the easement requested is for twelve months with the right "to survey, make borings, and conduct other investigatory work . . . including the right to trim or remove any vegetative or structural obstacle that interfere[s] with said work."[63] Yet, the estimated compensation would not cover the cost to repair even slight damages.

"The burden of establishing the value of lands sought to be condemned is on the landowner."[64] Federal courts have long held that an appropriate measure of damages in a partial-taking case, such as is the case here, "is the difference between the value of the parent tract before the taking and its value after the taking."[65] "[J]ust compensation must be measured by an objective standard that disregards subjective values which are only of significance to an individual owner."[66] Further, the estimated deposit alone is merely an estimate and is meaningless to the issue of just compensation.[67] Accordingly, although the Court is granting the United States' request for possession, the Court finds that in light of concerns the Court has

---

[63] Dkt No. 3-1 p. 11 (Schedule E).
[64] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.,* 680 F.2d 388, 394 (5th Cir. 1982).
[65] *Id.* at 392.
[66] *United States v. 50 Acres of Land*, 469 U.S. 24, 35 (1984).
[67] *See, e.g., Miller*, 317 U.S. at 381 ("The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner; it is a payment 'on account of' compensation and not a final settlement of the amount due."); *Evans v. United States*, 326 F.2d 827, 829 (8th Cir. 1964) ("The deposit of estimated compensation by the government is no evidence of value and has no bearing whatsoever on value.") (citations and internal quotation marks omitted); *United States v. Catlin*, 142 F.2d 781, 784 (7th Cir. 1944) (stating that the government's estimate of the value of the property taken "is merely tentative," and that "the amount awarded may be increased or decreased by final judgment.").

raised, Defendant may, if it chooses, present evidence at this stage to determine whether the $100.00 valuation is insufficient.

## IV.   MOTION TO CORRECT SCHEDULE A

Finally, the Court considers the motion to correct Schedule A[68] filed by the United States. Therein, the United States informs the Court that due to a Scrivener's error, each Schedule A contained in the complaint in condemnation,[69] notice of condemnation,[70] and declaration of taking[71] "only includes a citation to the 2018 appropriations bill, but not a citation to the 2019 appropriations bill, even though the funding for the taking existed at the time of filing."[72] The United States requests the Court grant the motion to correct Schedule A and "enter an Order correcting the citation in Schedule A of the Complaint in Condemnation, Declaration of Taking, and Notice of Condemnation."[73]

The Court finds good cause for the requested relief. Accordingly, the Court **GRANTS** the motion to correct Schedule A[74] and **ORDERS** the United States to file an amended Schedule A as a separate document on the docket.

## V.   HOLDING

Based on the foregoing, the Court **DENIES** the motion for expedited hearing[75] and **GRANTS** the United States' motion for immediate possession.[76] Therefore, the Court **ORDERS** Defendant to allow the United States access to the Subject Property to the following terms:

The United States is hereby granted the right to survey, make borings, and conduct other related investigations on Tract RGV-MCS-1215 for the public

---

[68] Dkt. No. 12.
[69] Dkt. No. 1-1 pp. 1–2.
[70] Dkt. No. 2-1 pp. 1–2.
[71] Dkt. No. 3-1 pp. 1–2.
[72] Dkt. No. 12 pp. 2, ¶ 4.
[73] *Id.* ¶ 4.
[74] Dkt. No. 12.
[75] Dkt. No. 16.
[76] Dkt. No. 13.

purpose of conducting surveys, tests, and other investigatory work needed to plan the proposed construction of roads, fencing, vehicles barriers, security lighting, and related structures designed to help secure the United States/Mexico border within the State of Texas. Additionally, the United States is granted the right to trim or remove any vegetative or structural obstacles on Tract RGV-MCS-1215 that interfere with the aforementioned purpose and work. The United States must provide Defendant 72-hour notice before entering Tract RGV-MCS-1215. The United States' possession of Tract RGV-MCS-1215 will begin immediately and will end on December 30, 2020. To the extent possible, the United States shall use contractors that have appropriate liability insurance. Any questions concerning just compensation for damages, if any, incurred by Defendant that have not been resolved will be addressed by this Court at a later date if and when raised by Defendant.

Further, the Court **GRANTS** the motion to correct Schedule A[77] and **ORDERS** the United States to file an amended Schedule A as a separate document on the docket. The parties' February 25, 2020 status conference remains.[78] The Court **ORDERS** the parties to submit individual briefings on the just compensation issue **by January 28, 2020**. In the alternative, the parties may file documentation establishing just compensation and/or dismissal documentation **by January 28, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 30th day of December, 2019.

_____
Micaela Alvarez
United States District Judge

---

[77] Dkt. No. 12.
[78] Dkt. No. 15.