# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 7:19-CV-250 |
| 72.260 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; AND FRIENDS OF WILDLIFE CORRIDOR, A TEXAS NONPROFIT CORPORATION, | § § § § § § § § | |
| *Defendants.* | § | |

## UNITED STATES' BRIEF ON JUST COMPENSATION

In response to the Court's Order, the United States files this Brief on Just Compensation. As discussed below, the $100 in estimated just compensation deposited in this case reflects the nominal value of the temporary right of entry acquired. This nominal amount of compensation is based on the limited nature of the right of entry: a right that is minimal in scope, limited in time, and reserves to the landowner all rights and interests that do not interfere with the government's ability to survey and assess the property. The $100 does not represent an attempt to estimate any claim for damages. Any damages caused by the government's actions in exercising its right to enter and inspect the property would be compensable in a separate claim. In this brief, the United States will outline the process for valuing a temporary taking in general and then specifically address the nominal value of the temporary estate acquired in this case, describe the other venues available for pursuing compensation for a damages claim, and explain how those potential claims have no bearing on the estimated amount of just compensation deposited in this case. In further support of this brief, the United States would show the Court the following:

# BACKGROUND

**The estate acquired in this action is limited in scope and duration.**

1. This brief's discussion of just compensation must begin with a description of the estate acquired. *See* J.D. Eaton, Real Property Valuation in Condemnation, The Appraisal Institute, 2018 ("Eaton") at 221 ("Before the effects of an easement acquisition can be properly evaluated, an appraiser must know exactly what the purpose of the easement area will be used for . . . .").[1] A right or interest in property is referred to as an "estate." The most basic property interest is a fee simple estate—the unimpaired ownership of real estate. An easement is typically the right to perform a specific action on a property without owning the underlying fee. Here, the United States acquired a temporary easement authorizing it to enter the landowner's property to do the following:

> make borings, and conduct [surveying, testing and other investigatory work needed to plan the proposed construction of roads, fencing, vehicle barriers, security lighting, camera, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas]… including the right to trim or remove vegetative or structural obstacles that interfere with said work . . .

Schedule E to Declaration of Taking (incorporating Schedule B), Doc. No. 3-1. The estate has a 12-month term. *Id*. Importantly, the landowner retains "all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights" specified above. *Id*.

**The touchstone of just compensation is fair market value.**

2. Under the Fifth Amendment's takings clause, private property may not be taken for a public purpose without "just compensation." U.S. Const. amend. V. Just compensation generally means the fair market value of the property when appropriated. *See Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 10 (1984). Fair market value is typically defined as "what a willing

---

[1] Excerpts of the Eaton textbooks cited in this brief are attached as Exhibit 1 for the Court's convenience.

buyer would pay in cash to a willing seller." *See United States v. Miller*, 317 U.S. 369, 374 (1943). "The best evidence of market value is comparable sales—*i.e.*, sales from a willing seller to a willing buyer of similar property in the vicinity of the taking at or about the same time as the taking." *U.S. v. 8.41 Acres of Land*, 680 F.2d 388, 395 (5th Cir. 1982) (citations omitted).

3. In a "partial taking"—where the government has only acquired a portion of a landowner's property via condemnation—courts use the "before-and-after" method to determine the fair market value of the acquired estate. The before and after method "computes damages to be the difference in the value of the entire [property] before the taking and the value of the portion remaining after the taking." *U.S. v. 8.41 Acres*, 680 F.2d at 392, n.5 (citing Nichols, the Law of Eminent Domain, 3d ed., 1981). With respect to a partial taking involving a temporary easement, rental value is often used to determine the fair market value of the estate acquired. *See Kimball Laundry Co. v. U.S.*, 338 U.S. 1, 7 (1949). Finally, certain temporary easements, where the "land area affected is so small and the term of the easement so short," result in only a nominal amount of compensation. *See* Uniform Appraisal Standards for Federal Land Acquisitions ("Yellow Book") (6th ed. 2016) at 42.[2]

**<u>The term "damages" in a condemnation action can have several meanings.</u>**

4. In the Order requesting this briefing, the Court questioned whether the government's estimated amount of just compensation in this case properly takes into account any claim by the landowner for damages. Doc. No. 17 at pp. 10-11. In addressing this issue, it is important to understand that "damages" can have several meanings in the context of a condemnation action. First, the term "damages" can refer to the decrease in a property's value caused by the acquisition itself. This type of damage only occurs in a partial takings case and is

---

[2] The Yellow Book is available at https://www.justice.gov/file/408306/download (last visited January 27, 2020).

often referred to as "severance damages." *See* J.D. Eaton, Real Estate Valuation in Litigation, (2d ed. 1995) at 289. Thus, when the government has physically acquired through its eminent domain powers a portion of a property, "the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking . . . ." *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quotations omitted). For example, say that a landowner owns a 10 acre tract of land and the government acquires 1 of those acres. Further assume that the government's acquisition reduces the access available to the landowner's remaining 9 acres. In this situation, the landowner's remaining property has suffered severance damages. An appraiser will calculate both the severance damages and the value of the estate actually acquired as follows: (the value of the 10 acres before the taking) – (the value the remaining 9 acres with reduced access after the taking) = the just compensation owed to the landowner.

5. Second, the term damages can mean physical damage to the landowner's property. For example, if the government harms a portion of a landowner's crops in the process of attempting to conduct a survey of the property. This is often referred to as "restoration damages." Restoration damages are typically associated with the acquisition of a temporary easement where the government is required to restore the property to its original condition after the term of the easement has expired. *See, e.g., U.S. v. 266.33 Acres of Land,* 96 F. Supp. 647, 647 (W.D. Wash. 1951) (discussing restoration damages); *Elliott v. U.S.*, 184 Ct. Cl. 298, 304 (Ct. Cl. 1968) (discussing a damages claim for "the loss of corn which was tramped down by the surveying party"). Due to the limited nature of the estate acquired, restoration damages—rather than severance damages—are the only type of harm potentially at issue in this case. Accordingly, the Court's Order requesting this briefing references this type of damage. Doc. No. 17 at pp. 10-11

(noting that "the estimated compensation would not cover the cost to repair even slight damages"). Therefore, the term "damages" in the remainder of this brief refers to restoration damages.[3]

**<u>The estimated just compensation deposited in this case</u>**

6. The United States deposited $100 in just compensation in this case. Doc. No. 6. This amount represents the government's value estimate of the temporary estate acquired. As noted above and explained in more detail below, because the estate acquired is limited in scope and duration, the $100 deposit was appropriate as it represents the nominal value of the estate. In depositing an estimated amount of just compensation, the government was not attempting to anticipate any amount of damages (*e.g.,* if the government damages vegetation as it surveys the property). The government does not anticipate damaging the landowners' properties when it uses the rights of entry in this project and, even assuming for the sake of argument that such damage does occur, it is not feasible to estimate and value it at the initiation of the condemnation suit. Finally, even if it could be estimated, this type of damage is likely only compensable in a separate action, which is addressed below.

## JUST COMPENSATION

7. In a federal condemnation action, just compensation for a fee acquisition is determined by calculating the property's fair market value on the date it was acquired—the "date of taking." *See generally United States v. Miller*, 317 U.S. 369 (1943); *United States v. Reynolds*, 397 U.S. 14 (1970). Courts determine the value based on what a hypothetical buyer in the open market would pay a willing seller. *Id*. Importantly, the value that the individual landowner places

---

[3] There are also "consequential damages", which are typically not compensable in a federal condemnation action. *See, e.g., Hooten v. U.S.,* 405 F.2d 1167, 1168 (5th Cir. 1969) (holding that "[i]t is well settled that where a business is damaged or destroyed incident to the condemnation of land, such losses are not compensable under the Fifth Amendment"). Because consequential damages are not compensable in, nor relevant to, this case, they are not discussed herein.

on a property is not relevant to the valuation inquiry. *See U.S. v. 79.20 Acres of Land, More or Less, Situated in Stoddard County, Missouri*, 710 F.2d 1352, 1357 (8th Cir. 1983) (holding that "[a]ny special value to the owner or to the condemnor must be disregarded by the fact-finding body in arriving at fair-market value") (citing *United States v. Miller*, 317 U.S. at 375). The just compensation for a partial taking is calculated using the "before-and-after" method valuation. *See U.S. v. 8.41 Acres*, 680 F.2d 392, n.5 (1982) (noting that "[t]he applicable Fifth Circuit . . . requires the *exclusive* use of the before-and-after method of valuation") (emphasis in original). Basically, the acquired property's value is determined by calculating the difference, if any, between property's fair market value the day before the taking and the remainder property's fair market value on the date of taking.

**The valuation of temporary easements**

8. In the case of a temporary taking, since the property is returned to the owner when the taking ends, the just compensation to which the owner is entitled is the value of the use of the property during the temporary taking. *See First English Evangelical Lutheran Church v. Los Angeles*, 482 U.S. 304, 319 (1987) ("Where this burden results from governmental action that amounted to a [temporary] taking, the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period."). When it comes to the government's acquisition of an easement in general, the "before and after" method of valuation is typically utilized to determine just compensation. *See U.S v. 8.41 Acres*, 680 F.2d at 392 (holding that "[w]hen the property interest taken . . . is merely an easement, the proper measure of damages is still the before-and-after method of valuation, expressed as the difference between the market value of the land free of the easement and the market value as burdened with the easement"). This type of calculation, however, is not always feasible when

considering the value of a temporary taking. Courts therefore often rely on rental value to determine compensation for the acquisition of a temporary easement. *See Kimball Laundry Co. v. U.S.*, 338 U.S. at 7 (holding that "the proper measure of compensation is the rental that probably could have been obtained . . ."); *see also* Eaton at 218 (noting that compensation for a temporary construction easement is "usually based on the market rent of the affected area for the term of the temporary easement").

9. In certain cases, even though the appraiser believes that the estate acquired has market value, its "rental value" may not be easily ascertainable due to a lack of market rental data. Eaton at 218. In those circumstances, an appraiser may use the property's fair market value and a rate of return to calculate the rental value in order to compensate the landowner "for losing the beneficial interest in the property" for the term of the easement. Eaton at 218. Again, an appraiser uses a rate of return as a substitute for actual rental data only when the appraiser determines that the estate acquired has market value but he or she cannot identify comparable rental rates in the market area. Whichever method of calculating the rental value is used, the acquisition of a temporary easement can be viewed as the government acquiring a leasehold interest in the property. 9 Nichols on Eminent Domain § G32.08 ("The rental value rule provides the owner of the property affected by the easement with compensation for the restriction on the owner's fee interest and any resulting interference with the owner's use"). The value of the temporary estate acquired is the amount of rent that would be paid in the market at the time of the taking.

**Temporary easements with a nominal value**

10. Temporary easements, like the right-of-entry easement at issue in this case, often do not affect the market value of the subject property. In other words, the available market data does not show a difference in the value of a property burdened with a temporary right-of-entry

easement to conduct a survey as compared to a property without such an easement. Relatedly, there is no market data showing a rental rate for easements to conduct a survey or similar evaluations—prospective purchasers do not typically pay for this right.[4] *C.f. generally Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 689 (W.D. Va. 2015) (collecting cases showing that the entry on private property for the purposes of surveying and other explorations does not result in a compensable harm). In these situations, the estate acquired is assigned a nominal value. As explained by a commentator:

> some easement takings have such a minimal effect on value that no discernable difference in market value before and after the taking can be ascertained in the market. Nevertheless, it is generally recognized that no property owner can be expected to convey land or an interest in land without compensation . . . some condemnors will make an administrative determination that the property owner should be offered a nominal amount of compensation . . .

Eaton at 223 ("Nominal Acquisitions"). Hence, as explained in the Uniform Appraisal Standards for Federal Land Acquisitions, certain temporary easements where the "land area affected is so small and the term of the easement so short" result in a nominal amount of compensation, as the following notes:

> rights of entry are often so short term in nature . . . and their purpose so restricted that agencies do not have an appraisal conducted of such properties, but rather they make an administrative determination of a nominal compensation for the acquisition.

Yellow Book at 42, n. 72.

11. In this case, the government determined that the temporary right-of-entry easement acquired had a nominal value. The right to access the property to perform surveys and other testing, while at the same time allowing the owner the full use of the property so long as it does not interfere

---

[4] For instance, when a home or landowner sells their property, most lenders require a survey and appraisal; however, granting temporary authorization for the property to be surveyed and inspected does not reduce the value and sales price of the property.

Page **8** of **13**
*Brief on Just Compensation*

with the investigatory actions, has no discernible effect on the property's market value. *See, e.g.,  U.S. ex rel. Tennessee Valley Auth. v. A Temp. Right to Enter*, 4:14-CV-085-HSM-SKL, 2017 WL 2559976, at *6 (E.D. Tenn. June 13, 2017) (holding that the landowner was "entitled compensation in the nominal amount of $1 for" the temporary right of entry to survey, which reflected "only the compensation owed for the taking of the temporary right to enter and is separate and distinct from any potential liability the Plaintiff may have for damage to property resulting from its survey and siting activities"). Likewise, due to the lack of market value, there is no rental data available for this type of limited access from which to derive something more than a nominal value. *See generally United States v. 50.822 Acres of Land in Nueces Cnty. Texas*, 950 F.2d 1165 (5th Cir. 1992) (affirming nominal damages award for condemned property interest with no market value). Thus, the government properly assigned a nominal value to the right-of-entry easement in this case, and other similarly situated cases, and deposited $100 in the registry of the Court to reflect that nominal value.

**The landowner has the right to challenge the government's valuation.**

12. The landowner retains the right to contest the government's estimate of just compensation. That is, if the landowner believes that the right of entry has more than a nominal value, it can present evidence showing that value. This is consistent with the burden of proof in condemnation cases: the landowner has the burden of establishing the value of the condemned property. S*ee U.S. v. 62.50 Acres,* 953 F.2d 886, 890 (5th Cir. 1992) (citing *United States ex rel. Tennessee Valley Authority v. Powelson*, 319 U.S. 266, 273–76 (1943)). This is not to be confused, however, with a claim to recover for damages that the government may cause to the property in the course of utilizing its right of entry. If the landowner believes that the government has damaged its property, it must separately seek to recover those damages, which is discussed below.

## FORUM FOR SEEKING DAMAGES

13. In the context of a temporary easement, a landowner who suffers physical damage to its property is not without a remedy. However, depending upon how the property was harmed, that remedy may be in a separate action against the government. In other words, if the landowner's property in this case were damaged, those damages may not be recoverable as part of the just compensation award in this suit. Whether the damages are recoverable as part of this suit or in another venue depends on a fact-specific inquiry. As noted above, in estimating just compensation at the initiation of the suit, the government does not presume that damages will occur (as none are expected) and then attempt to speculate on the scope of that damage. A non-exhaustive discussion of the venues available for recouping damages is presented below to provide examples of other potential remedies available to the landowner.

**The Federal Tort Claims Act**

14. If the landowner's property is harmed by the government's negligent actions, any claim for damages would fall within the ambit of the Federal Tort Claims Act (FCTA). The FTCA authorizes monetary civil claims against the federal government for loss of property caused by the negligent act or omission of any government employee acting within the scope of his or her employment. 28 U.S.C. § 1346(b) (1982). Under the FTCA, subject to certain exceptions, the government will be liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id*.; *see also, e.g.*, *E. Ritter & Co. v. Department of Army, Corps of Engineers*, 874 F.2d 1236 (8th Cir. 1989) (holding that the U.S. Army Corps of Engineers was liable under the FTCA for negligently constructing a flood control ditch that ran through the landowner's property, over which the government had acquired an easement, and caused erosion); *U.S. ex rel. Tennessee*

*Valley Auth. v. A Temp. Right to Enter*, 2017 WL 2559976, at *6 ("Any claim for physical damage to the subject property arising from the Plaintiff's performance of survey and siting activities pursuant to the temporary easement is a claim sounding in tort to be submitted to the responsible federal agency . . . , or if unresolved, in a separate civil action"). Thus, if in exercising its right of entry the government acts in a negligent manner and damages the landowner's property, such damage would only be recoverable in a separate FTCA claim.

**An Inverse Taking**

15. Another potential remedy available to landowners who seek to recoup damages, is an inverse takings claim. Specifically, if the government damages the landowner's property—*e.g.*, the hypothetical damages to crops noted above—then the landowner may claim that the government took that property interest without providing compensation. The United States Court of Federal Claims has jurisdiction over these types of takings claims.[5] *See, e.g., Yokum v. U.S.*, 11 Cl. Ct. 148, 149 (1986) (holding that, although barred by the statute of limitations, the plaintiff would have had a takings claim against the government for damage to a barn used by the government for storage during a temporary taking); *Elliott v. U.S.*, 184 Ct. Cl. 298, 304 (Ct. Cl. 1968) (discussing a damages claim for "the loss of corn which was tramped down by the surveying party").

**Restoration Damages as part of the Condemnation Lawsuit**

16. Although the above-cited case law supports the position that a claim for damages should be brought in another venue—separate from the condemnation action. There are cases recognizing a landowner's right to restoration damages in a condemnation lawsuit. *See, e.g., U.S.*

---

[5] For Fifth Amendment takings claims against the United States seeking more than $10,000, the United States Court of Federal Claims has exclusive jurisdiction. 28 U.S.C. § 1491(a)(1) (Tucker Act). For claims of $10,000 or less, the Court of Federal Claims shares concurrent jurisdiction with the United States district courts. 28 U.S.C. § 1346(a)(2) ("Little Tucker Act").

*General Motors Corp.*, 323 U.S. 373, 383-84 (1945) (allowing costs for damage to fixtures and equipment destroyed or depreciated during a temporary taking); *United States v. Flood Building*, 157 F. Supp. 438, 440 (N.D. Cal. 1957) (hearing landowner's evidence on alleged damage to its office building during temporary taking, but holding that the measure of just compensation "is the diminution of market value, if any, and not the cost of restoration"). These cases typically concern the government's damage or destruction of equipment or permanent fixtures on the property in question. *Id*. Whether this type of remedy is available to a landowner requires a fact-intensive review of the damage in question and the mechanism of harm. Thus, if a landowner suffers physical damage to its property during the term of temporary easement, several potential remedies are available to seek to recoup those damages. Which remedy and venue is appropriate cannot be determined at the outset of a condemnation action—when the government originally estimates just compensation.

## CONCLUSION

17. Here, the temporary easement acquired in this case, and other similarly situated cases, has a nominal value. The United States has therefore deposited $100 in the registry of the Court at the outset of this case as estimated just compensation. The landowner is free to contest the government's determination that a nominal amount of compensation is appropriate. With respect to damages, it would be premature to attempt to estimate any damages at the outset of the litigation. However, even if damages could be estimated, compensation may have to be sought in a separate action—depending on the type of damage and how it was caused. For these reasons, the government properly deposited a nominal sum of $100 in the registry of the Court without estimating any amount of damages.

Respectfully submitted,

**RYAN K. PATRICK**
United States Attorney
Southern District of Texas

**HILDA M. GARCIA CONCEPCION**
Assistant United States Attorney
Southern District of Texas No. 3399716
Puerto Rico Bar No. 15494
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8004
Facsimile: (956) 618-8016
E-mail: Hilda.Garcia.Concepcion@usdoj.gov
Attorney for Plaintiff

By: *s/Jimmy A. Rodriguez*
**JIMMY A. RODRIGUEZ**
Assistant United States Attorney
Southern District of Texas
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
E-mail: jimmy.rodriguez2@usdoj.gov
Attorney-in-Charge for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on January 28, 2020, a copy of the foregoing was electronically filed in the CM/ECF system, which will automatically serve a Notice of Electronic Filing on counsel of record, and by regular U.S. Mail to all *pro se* Defendants listed in this cause.

By: *s/Jimmy A. Rodriguez*
**JIMMY A. RODRIGUEZ**
Assistant United States Attorney